We do wish to reserve five minutes for rebuttal. All right. Well, try to keep track of your time. I'll try to remind you, but it's basically your responsibility. Thank you. On a number of issues, we think the written materials sufficiently cover our position, but I will highlight some points. Deportation is an element, and we contend that there was a structural defect in the deportation, because it was proceeded with while Mr. Bahena was in a hospital in the coma due to an auto accident. And in our view, that this is a due process violation of such a severe magnitude that it's virtually impossible to remedy. Well, how do you deal with the prejudice prong of the due process? Can you hear me? Yes. How do you deal with the prejudice prong? Yes. As far as — in our view, this is an inherent prejudice, and it's really a structural defect in the deportation itself. And with the — with Blakely and various cases emphasizing the need to prove all elements beyond reasonable doubt, I just don't see how the element of a deportation can be met in light of that severe a due process violation. To not — to proceed over counsel's objection, which was Lilia Velasquez, the immigration attorney, did object. But the key witness, Agent Sepulveda, was testifying. And I think for the Court to proceed in the absence of Mr. Bahena, we would contend it's an inherent prejudice. It's unthinkable that in Federal court we would be proceeding with anything of significance in the absence of the defendant being present. Also — also, one of the arguments I made below was that one of our district judges made a comment once that a trial is a living thing. When everyone comes together, it's — nobody knows quite what's going to happen. And some attorneys don't even like to do retrials because that spontaneity is lost. I know the government will argue — well, Agent Sepulveda was called back at a later proceeding. Mr. Bahena was present at that proceeding. But in our view, that's just something that can't be remedied. And also, as we've argued, it's the equivalent of an uncounseled prior under Alabama v. Shelton, and it would be a Sixth Amendment violation as well. Turning to the issue of voluntary entry, that in our view, voluntary entry is clearly an element under Pacheco and Quintana Torres. And it was never alleged in the indictment as required under DuBose. And we'll also be getting to the issue of — under Blakely, various sentencing enhancements were also not alleged in the indictment for the grand jury under — under DuBose. And it was never proven to the jury as required by Apprendi, Buckland, Blakely, and Ameline. And we'll also turn to the issue of the trial court — in our view, the trial court erred in allowing deportation documents to be admitted as evidence of alienage, that — and at no time did Mr. Bahena sign these documents. So they were — they were not admissions. Were they admitted as evidence of alienage or evidence of the prior deportation? Well, they were — over my objection, they were admitted as — as some evidence of alienage. But — but they were — they were also admitted — there was no other proof before the jury of a prior deportation. So it could have been the only basis for the jury to have found a deportation. And finally, they were the only basis for showing removal from the United States, physical removal from the United States. There was no witness at any time who said, I took Mr. Bahena to Mexico. I removed him physically from the United States. And Judge Moskowitz agreed that that had to be proven. And the only evidence of that was the documentary evidence, was the warrant of deportation. On that ground alone, I think Rule 29 should have been granted, among other grounds, as the failure to prove physical removal. And I think that also shows that these deportation documents went beyond just showing alienage. And they were — and again, it's our position that they were the product of a procedurally defective deportation. And the — and we also ask the Court to note that the standard of proof in a deportation is clear and convincing. It's a lower standard of proof. And in those proceedings, the burden sometimes shifts to the defendant, as it never would in a criminal trial. I want to turn to the Crawford issue. And the deportation documents which the government contends are non-testimonial in nature. These are not in the nature of — and I believe in the government's letter brief refers to use the word innocuous. I don't think there's anything innocuous about these. These are not business records that are just kept for the purpose of showing a particular business activity, but they're kept — Kennedy. What do you think that the standard or the test is for determining whether evidence is testamentary? Well, I think that when documents are kept by a prosecutorial agency with a view toward prosecution, then they would clearly fall within what is testimonial. It seems that the Supreme Court in Crawford declined to specify exactly what is testimonial and exactly what is not. But I think within the spirit of Crawford and the idea of — as Crawford states, that first the principal evil at which the civil law mode of criminal procedure and particularly its use of ex parte examination as evidence against the accused, that's the evil to be avoided, that we have kind of like a civil law system that countries like France have where you can bring in documents. And the essence of a case like this is the documents. So I think that a definition of what is testimonial would have to include documents that in this case are kept by the Department of Homeland Security for quasi-criminal prosecutions in the form of deportations proceedings, which are also to be used in criminal prosecutions such as this case and, in addition, have a substantial effect, not just resulting in conviction, but on the enhancement of sentence. We have a Ninth Circuit case that holds that a warrant of deportation is not made in anticipation of litigation, and that's United States v. Hernandez-Rojo. How do you deal with that? Well, I think that in light of — that the Hernandez case won't hold in light of Crawford in that these documents are relying strictly on documents that in the spirit of Crawford and in the holding of Crawford clearly are kept for the purposes of prosecution and I think would be testimonial in nature. And in this — in a case like this, there's no opportunity for Mr. Behena to cross-examine, for example, as to where was he taken? Was he physically removed from the United States? Was he taken anywhere? Was there any conversation that took place? There are a number of questions that could be explored in a cross-examination. And what Crawford says is that the key to determining the truth is to subject this test to the crucible of cross-examination. That's how our system works in terms of — It has to be testimonial before Crawford even applies. Yes, it does. I agree that it has to be testimonial. It's a very standard business document. But I don't — I don't believe, though, that this is a mere business document, as it would be different if it was just a document that was being kept by a business in the ordinary course. Oh, but a lot of government documents are considered business documents. How about a birth certificate? Well, we would make — depending on how it's being used, a birth certificate — there may be circumstances in which a birth certificate may be testimonial that's being used, used in connection with prosecution. But in this case, I think clearly these documents — A birth certificate, is it with the understanding that it's likely to be used in litigation? Well, I think a birth certificate — I'd have to — I'd have to say a birth certificate is a bit more of a stretch than the particular documents that I'm arguing. I think — 1326 cases where you have to prove alienage. Yes. In 1326 cases — Is that the purpose when the birth certificate is filled out? Is it filled out with the view that it's something that's going to be used in litigation? I wasn't asking whether it ever — You know, at the time it's filled out, I wouldn't say it's viewed in anticipation of litigation at the time that the birth certificate is made. In some cases, perhaps, in a delayed birth certificate, that may — there may be some context in which — but I think in these — in the case of a warranted deportation, these are clearly documents that are being kept for purposes of establishing elements of a — both a quasi-criminal offense in the deportation context and a criminal offense in terms of the 1326 prosecution. And there's a place for — there was a place for Mr. Behanin to sign which would have made an admission. In most cases, a number of these cases, these are argued as corroboration of an admission, but not in this case because he didn't sign. And the fact that — Can I ask a question about that? Yes. Because he did refuse to sign, but is that his picture and are those his fingerprints on this document? Yes, Your Honor. All right. Yeah, that is his — that was the only evidence of that. And also, the — a similar issue is raised with regard to the certificate of nonexistence of records of the CNR. And that's critical to an element which must be proven beyond a reasonable doubt. And — Well, it would be — it would be if he — there was an entry without consent, and I think the CNR has determined whether or not he received some permission to come in. So that's critical to the government's case. No, no. I understand that they're both critical. The question is, if you were to lose the argument on the warrant of deportation, whether that's testimonial, could you still win the argument on the CNR, whatever it is? Yes. Yes, I believe so, Your Honor. I mean, if the Court disagreed with my argument on the warrant of deportation, then it's possible the Court might agree with my argument on the CNR, and that the CNR presents the opinion as to nonexistence of records. In this context, it's impossible to cross-examine as to how the search was conducted. The jury can't observe the demeanor under cross-examination as to how the search was conducted to determine whether or not such records exist or not. So I think both fall under testimonial, as types of testimonial evidence, under Crawford. But in answer to the Court's question, it's conceivable the Court might agree with me as to CNR and not agree with me as to warrant of deportation. Counsel, if we were to agree with you on those documents, what about all the delayed birth certificates that your client introduced? Or, well, the government introduced delayed birth certificates, and you introduced a registration that was done of a birth certificate that was done at the time of deportation proceedings. Are all those documents then considered testimonial as well? Well, I'll put it this way. As to the documents that we introduced, I don't think there's a confrontation issue, as there is in Crawford. What about the delayed Mexican birth certificates that the government introduced? Yes, I think there is an issue with the delayed Mexican birth certificates, because we didn't have any opportunity to cross-examine with respect to those. And the government indicated that in a previous trial, a secretary from the state of Guerrero came forth and testified, but not in our case. So we would contend that Crawford would apply to that as well, and that that would be testimonial in nature. With regard to, particularly with regard to a delayed birth certificate, and there's also significance there with regard to the evidence we put. One of the issues that we briefed was the limitations that were placed on our cultural experts as far as explaining culturally why one would seek such a delayed birth certificate in Mexico as a way of getting through day-to-day activities. And again, the absence of evidence, both with regard to the documents that we brought forward, and the absence of evidence versus the government, I think that our Rule 29 was fairly strong in this case as well. But in addition, on the issue of the absence of evidence of physical removal on the grounds of this. I think you said you wanted to save 5 minutes. Yes, I think we've got 2 minutes and 28 seconds, so I think I will save that. Thank you for reminding me, Your Honor. Good morning, Your Honors. Ann Perry on behalf of the United States from the Southern District of California. I guess I'll start with the Crawford issues. In this particular case, as I indicated in my letter brief, which sounds like everybody received in a timely manner. What I didn't find in the letter brief is what you think the test is. How would you define? I was thinking about that during your question, opposing counsel, Your Honor. I think that the test should be if the document involved somehow represents something akin to testimony, such as, as they indicated in Crawford, grand jury testimony, an affidavit, a deposition, something of that nature. In Crawford, they specifically stated that business records were not considered testimonial. This Court has held in Loyola Dominguez that A-file documents are business records that are admissible. And I think that under the circumstances, the A-file documents are not testimonial. As I indicate, may I continue? There's a query on your face, sir. I'll go. They tell you open since now. Thank you, Your Honor. There's a query. Your Honor, there were different types of documents in this case. We had the warrant deportation. Let's start with the warrant deportation. Warrant deportation is simply a document. What do you think of the definition quoted in Crawford that would say, statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial? Absolutely not, Your Honor. A-file documents are, as our witnesses often say in cases, an A-file is created based on an individual's contact with what was formerly INS, now the Department of Homeland Security. These documents may never be used again. It's often a misconception. It may never be used for a person. I'm sorry. Are you disagreeing with the definition that's listed in Crawford or with the fact that this falls under the definition? I don't think that this is a document that falls. Oh, no, no. My question was what do you think of the definition? I think it's fine. Okay. So the question then is, now that we get to your answer to the second question, you say that these are not documents that are, that an objective witness would reasonably believe would be available for use at a later trial. That's true. They may be available for use, but I don't think that they are created in contemplation of either prosecution or a further trial, because what they are. The question, the definition, I'm not saying that the Court adopted it. It's one of the definitions they list had to do with whether you would reasonably believe it would be available for use. Other definitions I've seen in dictionaries or other sources for defining testamentary are statements made with a reasonable anticipation of evidentiary use or with a reasonable anticipation that it will be used in a proceeding or would lead an objective person to believe the statement would be available. That's very similar to that. Or would leave, would lead a reasonable person to anticipate the statement would likely be used for evidentiary purposes. Does it meet any of those definitions? I don't think so, Your Honor, because if the person never comes back, it would never come up again. It is simply, the warrant of deportation is simply a document that documents, for lack of a better word, is evidence that somebody has left the United States. This was in conjunction with the stipulation that we had Tanner into by the parties of the order of the immigration judge, because I believe part of the materials that you all request included the order of the immigration judge, which was some 35 pages long, and we couldn't put that in. What is your understanding of the purpose for which the notation is made on the document on the warrant? What's the reason for that and what happens to it? The purpose for the notation and information on the document is for, it is a record that the person may have left or is supposed to have left. The person left, right? If you write on it that you've witnessed his departure. Right. That's to have a record that he left. And why do you want a record that he left? For, I think it completes the deportation process, Your Honor. That's what I think. I think that's what I know from talking to Immigration and Naturalization. And it's not, you think, because people think you may need to use it again? Absolutely not. Absolutely not. Is it fortuitous if it happens to be available for use in criminal prosecutions? It is fortuitous if they happen to come back, Your Honor. And, of course, a lot of these things with regard to Mr. Bahena were always almost superfluous, and I don't like to use a term like that. But Mr. Bahena has always contended, of course, that he's a United States citizen, so he was not subject to deportation. We also, I presume, will get on to the certificate of nonexistence. This was almost an irrelevant issue to Mr. Bahena. Well, it's not irrelevant if it's the only evidence there is that he was ever deported. You do have to prove the element of a prior deportation, don't you? Absolutely, Your Honor. But that goes to the warrant. Yes. But also we have the situation of the certificate of nonexistence, which. Well, no, I was just exploring the warrant at the moment. We should get to the certificate. So your understanding is that the reason that this is listed on the warrant is just so that you have a record, so that you'll have nice, clean files, not in anticipation that it may be used against him ever. No. In a future deportation or. I think not, Your Honor. It's just a pleasant surprise that when you have to prosecute him, you have the evidence in the file. I don't mean to be flip, Your Honor, but these documents are done as part of the processing of an alien for deportation. The fact that he may come back, he or she may come back later and it may be used against him, I – it is my understanding that the document would certainly continue to be created irrespective of whether the individual comes back or not. But certainly we would know it would be available for use at a later trial when it's prepared. It certainly would be available because it's put in the file. If that definition is correct, it would meet that definition. It might, yes. Okay. All right. Do you want to get on to the next document? With regard to the certificate of nonexistence. The first issue on this case, and of course, here again, Your Honors, one of the other issues I think that was brought up by Crawford was this idea that a document was plunked forth or a statement that was brought forth where there was no ability to cross-examine at all. To the extent that the Court deems it to be relevant, all of the documents that were brought forth in the trial against the appellant were brought in through an individual representative of the Immigration and Naturalization Service. He, in fact, had actually done a manual examination of Mr. Behena's extensive, as I might add, alien registration file and saw through his own personal observations of the file that there had been no I-212 form listed. He was subject to cross-examination. He testified? Yes, he did, sir. Okay. That was Agent Ridinger. He testified, I believe, on the first day of trial. Well, then I'm not sure I see what the problem is with that. He testified he had made a search, and do you know that it's? He made a physical search. And then he also indicated, Your Honor, I believe I wrote down references to the record. I'm sorry, I do have it noted in my brief, Your Honor. But Agent Ridinger actually testified that not only had he made a manual search of the entire file, he was the one who sent off to Washington for further information regarding any evidence out there. Yes, sir. And, of course, to this, this evidence in the end was not disputed substantively because it would have been counterproductive to the defendant's position that he wouldn't have needed permission to come back in anyway since he was a citizen of the United States. Alienage was really the issue in this case. Very briefly, if I could respond to a couple of points that have been made. Unless. No, no, go ahead. Okay. A couple of things. Certainly, Judge Wardlaw had made a question about the immigration proceedings, the deportation hearings. It is certainly the government's position that there was no fundamental flaw. In reviewing the materials last night for the umpteenth time in this case, I was able to discern that, in fact, with regard to the critical testimony of the witness of whom Mr. Behena complains, the, I think a clear reading of that transcript indicates that it was actually a bifurcated hearing pretty much. In fact, Mr. Behena, the defendant, was in a coma during the first part of the proceeding. However, there was questioning done of both witnesses. If the court looks at page 38 of the hearing transcript, the proceedings were as to Eriberto, who was his brother, is his brother. And then in April of 89, there was the same agent's testimony specifically focusing on the appellant, and that was at the direction of the immigration judge. So, in accord with what Judge Wardlaw has posited, it would be the government's position that there was no due process violation and certainly no prejudice, because a clear reading of the immigration transcript indicates that the first focus was on Eriberto. It was a joint deportation proceeding. They were represented by the same attorney throughout. Your Honors, it was brought before you that there was no evidence proven of a voluntary entry. I think Quintana Torres still deals with this issue, as does Parga-Rosas. Certainly, it was not required to be alleged. However, in this particular case, the defendant was found in National City, California, which is some distance from the border, and under Quintana Torres, that evidence would suffice for a voluntary entry. If there are no further questions. Thank you very much, counsel. Thank you, Your Honor. First of all, that with regard to the argument that Mr. Baines's counsel is representing two individuals, that is true. She was representing Eriberto Vajena, my client's brother, at the same time. But I don't think that really takes away from the due process violation of going forward over her objection without him being present and the fact that my understanding was that Agent Sepulveda, the witness in question, was brought back more for the convenience of the government at an investigation. But didn't he cover everything that related to your client when he came back? In the testimony? And we certainly got a full opportunity. He did get a second crack at it, but as the — I'll just incorporate the arguments I made earlier. I think that that just wasn't enough, in my view, to make up for the gross due process violations of proceeding in his absence during critical testimony in the first place. But I want to turn to the issue of Crawford and, in my brief time, to respond a little bit to the argument that these documents are non-testimonial. First of all, as the Court noted, I think the government's argument is essentially disagreeing with the Supreme Court's definition, because I think by the Supreme Court's definition, the government's argument is that it's a non-testimonial document with an eye toward prosecution. And if they — I think the argument is being made that, in effect, it's up to him as to whether he comes back or not. Is that the primary purpose of these documents? Particularly with the warrant of deportation and the certificate of nonexistence of records, these are made for prosecution. And as I look at these documents, the certificate of nonexistence is in the government's — Volume II of the government's excerpt. And this has the testimony of Ruth Jones that we were not able to cross-examine, talking about how she conducted her search. And there was no opportunity to do that. And if I may have just about two more sentences. Kennedy. Well, you can have an extra couple of minutes. Roberts. Thank you, Your Honor. And with regard to the warrant of deportation, this warrant says that it was witnessed. It's signed by a witness. It says, if actual departure not witnessed, fully identify source and means of departure. This is clearly something that is being kept for purposes of anticipation of subsequent litigation, of subsequent prosecution. And there's no question. Let me ask you, if the test were what the purpose is, wouldn't we really require before you could decide this question an evidentiary hearing as to what the purpose is? I mean, you're both telling us what you think the purpose is. But in order to decide the question of whether that was the purpose of maintaining these records, wouldn't you need to have a hearing where somebody asked the government why it kept it, cross-examined them, developed a factual record before there could be a ruling? If the test were, is that the purpose of preparing the document? Well, I think that your word or the government's word. I think that would be one way of dealing with it. But the crux of the Crawford case is to uphold the right of cross-examination so the person isn't just convicted based, like in a civil law jurisdiction, based on documents being presented. And these documents are certainly given. You're not answering the question that I'm asking you. The question is, if the test were, what was the purpose in preparing the documents? And if the purpose were to prepare it for litigation, you'd get one answer. If it were to prepare it for other governmental purposes, you'd get another. How can you decide that question without some kind of examination of the government as to why they keep the documents? Well, I think if the test were, is the purpose, then that would be one way to approach it, would be to have a hearing to determine what the purpose was. Now, what we said the test was in Parle, which was our only post-Crawford case, was whether it was created under, quote, under circumstances which would lead an objective witness reasonably to believe that it would be available for use at a later trial. In that test, as the Supreme Court stated, and as you just stated, Your Honor, in R.V. Clearly. Well, I don't say that. I just read from Parle. That was it. Okay. As that test, these documents being created where an objective witness would believe that they are to be used in subsequent prosecution, clearly the answer would be yes as to the documents used by the government in this case. And at the heart of this is the right of cross-examination that we didn't have as a result of the fact that these documents were introduced without an opportunity to cross-examine on these. And for those reasons, this case should be reversed. Thank you, counsel. Thank you, Your Honor. The case is here. It will be submitted. The Court will stand in recess for the day. All rise. Thank you, Your Honor.
judges: Reinhardt, Hall, Wardlaw